UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MIZANUR CHOUDHURY,

                  *Plaintiff,*

   – against –

NORTHWELL HEALTH, INC.; DENNIS
BERGEN; THOMAS HYNES; SIG
STEFANSSON; VINCENT PAWLOWSKI;
& KARINA NORR,

                  *Defendants.*

**MEMORANDUM & ORDER**
23-cv-01406 (NCM) (SIL)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Mizanur Choudhury brings claims against his former employer, defendant Northwell Health, Inc. ("Northwell"), and individual defendants Dennis Bergen, Thomas Hynes, Sig Stefansson, Vincent Pawlowski, and Karina Norr, alleging that defendants subjected him to discrimination based on his race, national origin, and religion, that he was subjected to a hostile work environment, and that defendants failed to accommodate his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17, and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"). Compl. ¶¶ 115–35, 142–56. Plaintiff also brings a claim of retaliation in violation of Title VII. Compl. ¶¶ 136–41. Finally, plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for the violation of his rights guaranteed by the Equal Protection Clause of the United States Constitution. Compl. ¶¶ 157–63. Defendants move for summary

judgment on each of plaintiff's claims.[1] For the reasons discussed below, defendants' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

In 2015, plaintiff Mizanur Choudhury interviewed for a position as a Senior Networking Engineer on Northwell's Network Engineering Team. Counter 56.1 ¶ 3.[2] Plaintiff was interviewed by defendant Dennis Bergen, Senior Manager for Network Engineering, and John Vanegas, a manager. Counter 56.1 ¶ 4. Plaintiff was not offered this position. Counter 56.1 ¶ 11. Plaintiff then interviewed for a different position as a Manager of Network Operations in December 2016. Counter 56.1 ¶ 13. Plaintiff interviewed with Don LePore, who offered plaintiff the job. Counter 56.1 ¶ 14. LePore testified that around the time plaintiff was hired, Bergen approached LePore and asked "why did you hire this Muslim guy, I do not like him" with an "evil smirk." Counter 56.1 ¶ 23. Defendants deny that this incident occurred. 56.1 Reply ¶ 4.

After plaintiff was hired, he reported to LePore, who reported to defendant Bergen. Counter 56.1 ¶ 29. Plaintiff's responsibilities included managing a team of engineers. Counter 56.1 ¶ 25. Defendant Thomas Hynes held the same position as plaintiff, as a Manager of Network Operations, and managed his own team of engineers.

---

[1]    Hereinafter, the Court refers to defendants' memorandum of law in support of their motion for summary judgment, ECF No. 41, as "Mot."; plaintiff's memorandum in opposition to defendants' motion for summary judgment, ECF No. 42, as "Opp'n"; and defendants' memorandum of law in further support of their motion for summary judgment, ECF No. 43, as "Reply."

[2]    The facts contained herein are undisputed unless otherwise indicated, and are taken from the parties' statements pursuant to Local Civil Rule 56.1, specifically defendants' 56.1 statement ("56.1"), *see* ECF No. 41-1, plaintiff's counter 56.1 statement ("Counter 56.1"), *see* ECF No. 42-1, and defendants' response to plaintiff's counter 56.1 statement ("56.1 Reply"), *see* ECF No. 43.1.

Counter 56.1 ¶¶ 25, 29–30. One of the engineers assigned to plaintiff's team was Matthew Procaccino, an employee with documented performance issues. Counter 56.1 ¶¶ 35–36. Human Resources ("HR") directed LePore and plaintiff to document Procaccino's performance. Counter 56.1 ¶¶ 40–41. Procaccino was eventually terminated in 2018. Counter 56.1 ¶ 42. Following Procaccino's termination, plaintiff and LePore were each given a verbal counseling by Bergen for failing to provide daily updates on Procaccino. Counter 56.1 ¶¶ 43–46. Plaintiff claims that the counseling he received was unwarranted because Bergen had directed plaintiff to stop giving daily reports prior to Procaccino's termination. Counter 56.1 ¶ 44. Both plaintiff and LePore complained to HR about their verbal counselings. HR investigated the complaints and concluded that both counselings were warranted. Counter 56.1 ¶¶ 46, 51–54.

LePore was terminated by defendant Northwell on January 18, 2019, and his role was not filled by another employee. Counter 56.1 ¶¶ 57–58, 61–62. After LePore's termination, plaintiff began reporting directly to Bergen. Counter 56.1 ¶ 64. Bergen thereafter divided responsibility for the operation of the network between plaintiff and plaintiff's counterpart Hynes, assigning each of their teams a particular geographic region. Counter 56.1 ¶¶ 65–66. Plaintiff claims that his region was underresourced in comparison to Hynes's team. Counter 56.1 ¶ 70.

Bergen conducted plaintiff's performance evaluations from 2019 to 2021. Counter 56.1 ¶¶ 73, 81, 108. In that time, Bergen gave plaintiff critical reviews. Counter 56.1 ¶¶ 74–84, 108–10. Plaintiff disputed each evaluation. Counter 56.1 ¶¶ 74–84, 108–10. On September 24, 2020, Bergen administered a written warning to plaintiff for a problem relating to the LightPath Circuit. Counter 56.1 ¶ 86. Review of the record shows that an issue was flagged on an email chain with plaintiff, Hynes, and some of their engineers.

*See generally* Opp'n Ex. 16 ("LightPath Email"). One of plaintiff's engineers responded to the email, stating that he would handle the issue only as to plaintiff's assigned region. LightPath Email 2. Bergen testified that plaintiff was issued a warning because the LightPath Circuit issue affected a data center that connected to all regions, and because plaintiff's team represented that they were handling it, plaintiff's team had a responsibility to fix the issue for all regions. Mot. Ex. 7 ("Bergen Dep. Tr.") 93:7–22, 94:11–16, ECF No. 41-9. Plaintiff denies that his team should have addressed all regions and contests the validity of the written warning he received. Counter 56.1 ¶¶ 86–88, 92, 97.

A few months later, Bergen administered a final written warning to plaintiff. Counter 56.1 ¶ 98. Bergen issued that warning due to a Verizon WAN circuit issue that occurred on November 12, 2020. Counter 56.1 ¶ 101. Defendants contend that plaintiff acknowledged an issue with the circuit during business hours, but failed to take steps to limit its impact, which negatively affected E911 services and the call center used to dispatch ambulances. Counter 56.1 ¶¶ 101–02. Plaintiff denies responsibility for this incident. Counter 56.1 ¶ 101. Eight days after plaintiff received the written warning, he lodged a complaint against Bergen alleging that plaintiff was being unfairly targeted because of his identity. Counter 56.1 ¶¶ 157–58. The Advice and Counsel Center ("ACC"), an extension of the HR Department, investigated this complaint. Counter 56.1 ¶ 159. The ACC found that plaintiff's complaint was not substantiated after interviewing plaintiff, Bergen, and Bergen's supervisor Sig Stefansson. Counter 56.1 ¶¶ 159–61.

At some point, it was decided that a role similar to the one held by LePore in 2019 should be reinstated. Counter 56.1 ¶ 130. The parties dispute whether this role was posted in the company job portal. Counter 56.1 ¶ 131. Hynes was promoted to this role in 2022

and became plaintiff's direct supervisor. Counter 56.1 ¶¶ 133, 164. Following Hynes's promotion, plaintiff and Hynes's relationship deteriorated, including in April of 2022 when they had tense interactions. For example, Hynes emailed plaintiff to request a list of candidates plaintiff had interviewed to fill vacancies on plaintiff's team, to which plaintiff responded "Hi, I am not sure what you are asking and what are you looking for? . . . What are you looking to accomplish? . . . My team is supporting more than half of the enterprise with only six engineers. Let's work on the issues please. Let's focus." Counter 56.1 ¶¶ 168–69.

When Hynes began supervising plaintiff, he learned that plaintiff required a religious accommodation for prayer time. Counter 56.1 ¶ 219. Hynes requested plaintiff to mark his calendar to indicate when he was not available. Counter 56.1 ¶ 221. The parties dispute whether plaintiff eventually marked his calendar with his prayer times, and whether after doing so plaintiff was required to attend meetings which conflicted with his prayer time. Counter 56.1 ¶¶ 221–22.

That same month, Bergen also requested that plaintiff indicate on his calendar when he was available and to mark non-work meetings in his calendar as personal. Counter 56.1 ¶ 170. Plaintiff responded stating "Hi man, you are harassing me now . . . I have a lot to catch up but you are harassing me. . . If this is important for you then let's have it at 4 PM. If not, we can do it next week." Counter 56.1 ¶ 171. Plaintiff lodged another complaint of discrimination through a phone call with an HR representative on May 12, 2022, which he recorded. Counter 56.1 ¶ 172. In this call, plaintiff claimed that Bergen had told him, either two years previously or maybe in 2019, that people from plaintiff's background were not always as smart as plaintiff or easy to work with. *See* Mot. Ex. 33 ("HR Confidential Complaint") 15:41–17:48, ECF No. 41-35. In this call, plaintiff also

accused Bergen of making fun of one of plaintiff's engineer's names. Counter 56.1 ¶¶ 173–74. The ACC investigated this complaint, interviewing plaintiff and others, including the individual whose name plaintiff claimed Bergen was mocking. Counter 56.1 ¶¶ 173–76. The ACC concluded that plaintiff's claim was unsubstantiated. Counter 56.1 ¶ 177.

A week after his complaint to the HR Representative, plaintiff complained to Hynes that Hynes had gone to one of plaintiff's engineers directly for a task, stating: "You need to STOP doing that. I am still their manager. . . Let's stay within protocol and not confusing team members about my leadership capability. Consider this a friendly advice." Counter 56.1 ¶ 178. Plaintiff again made a similar complaint to Hynes the following week stating, "Man, you have too many opinions and too many advice. STOP treating me as a new employee and I am not your slave." Counter 56.1 ¶ 179.

Hynes issued plaintiff a Performance Improvement Plan ("PIP") on July 7, 2022. Counter 56.1 ¶ 186. Plaintiff claimed that the PIP was vague and lacked specific details. Counter 56.1 ¶ 188. Shortly after the PIP was issued, plaintiff and Hynes met to discuss it. Counter 56.1 ¶¶ 188–89. During this meeting, which plaintiff recorded, Hynes highlighted that plaintiff had failed to schedule a 1:30 PM meeting the previous day which Hynes had requested, and plaintiff responded that he did not schedule the meeting because he was out to lunch and he did not consider the request an emergency. *See* Mot. Ex. 36 ("PIP Meeting") 6:55–8:00, ECF No. 41-38; *see also* Counter 56.1 ¶¶ 188, 190. Plaintiff also informed Hynes that if Hynes thought the meeting was "so important, [he] should have put it together," *see* PIP Meeting 18:04–09, and in reference to another meeting plaintiff did not attend, that plaintiff did not "have to join every call [Hynes] ask[s] [plaintiff] to join," *see* PIP Meeting 20:20–25. During that call, Hynes also noted that he had asked plaintiff to send out minutes from a recent meeting and plaintiff had failed to do so, to

which plaintiff responded that type of work was "not gonna happen by me because I don't have time to do that." PIP Meeting 23:42–52.

The next month plaintiff and Hynes met to review plaintiff's progress on the PIP, and Hynes informed plaintiff he was not meeting the expectations outlined in the PIP. Counter 56.1 ¶ 198. Plaintiff disputes that he was not meeting the expectations of the PIP. Counter 56.1 ¶ 198; *see also* Opp'n 16. Later that week, Hynes contacted a member of plaintiff's team with an emergency task. Counter 56.1 ¶ 212. Plaintiff represented he would handle the task on the next business day. Counter 56.1 ¶ 212. Hynes had a meeting with plaintiff the next day to discuss the events of the previous day. Counter 56.1 ¶ 213. During that meeting, Hynes instructed plaintiff that if the assigned engineer was unavailable, plaintiff should have assigned it to another engineer or done it himself that day, as the task would have taken a few minutes. Counter 56.1 ¶ 215. Plaintiff responded that Hynes was micromanaging him, and that the requested task was not a priority. Counter 56.1 ¶ 218.

In late August 2022, Hynes began drafting a termination notice in consultation with HR. Counter 56.1 ¶¶ 227–29. Plaintiff was presented with his termination notice on September 26, 2022. Counter 56.1 ¶ 230.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13

F.4th 247, 259 (2d Cir. 2021).[3] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence[.]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

## DISCUSSION

### I. Title VII and NYSHRL Claims

Plaintiff claims that (1) he was terminated because of his protected characteristics and for making complaints of discrimination; (2) he suffered a hostile work environment based on his protected characteristics; and (3) defendants failed to accommodate his religious beliefs in the workplace. Defendants move for summary judgment on each claim. *See generally* Mot. The Court evaluates each of plaintiff's claims in turn.

#### A. Discrimination

Historically, courts have treated discrimination claims under the NYSHRL and Title VII as "analytically identical" and evaluated them pursuant to the same standard. *See Charles v. City of New York*, No. 21-cv-05567, 2023 WL 2752123, at *6 (S.D.N.Y. Mar.

---

[3]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

31, 2023). Under that standard, to establish a claim of employment discrimination under Title VII, a plaintiff must "prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024), *cert. denied sub nom.*, *Golub Corp. v. Bart*, 145 S. Ct. 173 (2024). Where "only circumstantial evidence of discriminatory intent is available, courts use the *McDonnell Douglas* burden-shifting framework to assess whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Id.*

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case by showing: (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he was subject to an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). "Once a plaintiff has established a prima facie case, the burden shifts to the [defendant] employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Stephan v. W. Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 79 (2d Cir. 2011). If the employer satisfies this burden, the plaintiff must then show that the stated reason is either pretextual, or that an impermissible consideration was nonetheless a motivating factor in the adverse employment action. *Bart*, 96 F.4th at 570.

As noted above, courts construed both Title VII and NYSHRL claims pursuant to this framework. However, in 2019, the NYSHRL was amended to provide that its provisions "shall be construed liberally . . . regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300 (2023). Following this amendment, courts

have scrutinized discrimination claims brought pursuant to the NYSHRL under a more lenient standard akin to the standard for claims brought pursuant to the New York City Human Rights Law ("NYCHRL"). *See Reyes v. City Prac. Grp. of N.Y., LLC*, No. 22-cv-09482, 2025 WL 388524, at *11 (S.D.N.Y. Feb. 4, 2025) ("Following the New York legislature's 2019 amendment to the NYSHRL . . . courts [] now scrutinize discrimination claims brought pursuant to the NYSHRL under a lenient pleading standard similar to the standard for NYCHRL discrimination claims."); *see also Wright v. White Plains Hosp. Med. Ctr.*, 237 A.D.3d 1143, 1145 (N.Y. App. Div. 2025) ("As a result of the amendment, the NYSHRL now aligns with the standards of the New York City Human Rights Law[.]"). Under the NYCHRL, a plaintiff may establish discrimination by showing that he was treated "less well, at least in part for a discriminatory reason." *Khwaja v. Jobs to Move Am.*, No. 19-cv-07070, 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021).

The parties do not dispute that plaintiff has satisfied the first three requirements for a prima facie case of discrimination. The parties agree that plaintiff belongs to a protected class, as a brown, Muslim man of Bangladeshi descent. *See* Mot. 22. The parties also agree that plaintiff was terminated, which constitutes an adverse employment action. Mot. 22; Opp'n 21. The parties dispute, however, the final requirement of a prima facie case—whether plaintiff has offered sufficient evidence to show that he was terminated under circumstances giving rise to an inference of discrimination. Mot. 22; Opp'n 21–22.

### i. Termination

Defendants argue that plaintiff has failed to offer evidence that his termination occurred under circumstances giving rise to an inference of discrimination, and thus plaintiff cannot establish a prima facie case of discrimination in connection with his termination under either the Title VII or NYSHRL standards.

10

A plaintiff satisfies the final requirement of a prima facie case of employment discrimination under Title VII when he can offer evidence to show that the plaintiff's protected characteristic was a "substantial" or "motivating" factor contributing to the employer's decision to take the action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). The plaintiff's burden to make out a prima facie case of discrimination under the NYSHRL is even lower and may be satisfied if he can show that unlawful discrimination played any role in the adverse employment action. *See Wright v. White Plains Hosp. Med. Ctr.*, 237 A.D.3d 1143, 1145 (N.Y. App. Div. 2025) (noting that under the NYCHRL, and by extension the NYSHRL, unlawful discrimination "must play no role in an employment decision"). Plaintiff argues that he has made these showings. Opp'n 21. The Court disagrees.

Plaintiff contends that discriminatory conduct began in 2015 when Bergan "refused to hire" plaintiff to the Senior Networking Engineer position, and that after plaintiff was hired for another position in 2016, Bergen approached LePore to ask LePore, "Why did you hire this Muslim guy, I do not like him" and that during that confrontation Bergen had "an evil smirk." Opp'n 21; Mot. Ex. 12 ("LePore Dep. Tr.") 19:10–21, ECF No. 41-14. Plaintiff also points to his own testimony that in either 2019 or 2020 Bergen told him that people from plaintiff's background were not always as smart as plaintiff or easy to work with. Opp'n 21. As an example of discriminatory conduct which raises an inference of discrimination regarding his termination, plaintiff also contends that Bergen would approve Hynes's requests for resources or extra engineers within a few days but would take much longer to approve plaintiff's requests, even though plaintiff's team had fewer engineers and was responsible for overseeing a larger region. Opp'n 21–22. These facts, viewed in the light most favorable to plaintiff as the nonmovant, are insufficient to

create an inference that plaintiff was terminated, at least in part, because of his protected characteristics.

The gap in time between the last offensive comment made by Bergen and plaintiff's termination undermines plaintiff's argument that his termination occurred under circumstances giving rise to an inference of discriminatory intent. *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) ("[Plaintiff] was terminated more than four months after any of the alleged discrimination. As a matter of law, this is simply too large a gap to demonstrate a causal connection."). *Cf. Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 48 (2d Cir. 2025) (finding summary judgment inappropriate where decisionmaker who fired plaintiff made racially offensive comments shortly before plaintiff's termination). Here, the first offensive comment directed at plaintiff and attributed to Bergen occurred sometime in late 2016, around the time that plaintiff was hired by Northwell, and over five years before plaintiff's termination. *See* LePore Dep. Tr. 19:10–21; Counter 56.1 ¶ 24. The other offensive comment plaintiff attributes to Bergen was made—at least—two years before plaintiff's termination. *See* HR Confidential Complaint 15:33–17:48. This is too large a gap to support a causal connection between Bergen's alleged discriminatory animus and plaintiff's termination.

Plaintiff's attempt to create a causal connection between Bergen's offensive comments and plaintiff's termination is further undermined by the fact that Bergen, the only individual that allegedly made offensive remarks, is not the individual who made the decision to terminate plaintiff. Plaintiff was placed on a PIP in July 2022 by his direct supervisor, Hynes. Counter 56.1 ¶ 186. Plaintiff has offered no evidence that Bergen was involved in the decision to place plaintiff on the PIP, in monitoring his progress on the PIP, or in the decision to terminate plaintiff in September 2022. Hynes testified that the

decision to put plaintiff on the PIP, and the development of the PIP's objectives, occurred between himself and HR. Mot. Ex. 11 ("Hynes Dep. Tr.") 131:13–20, ECF No. 41-13. Additionally, email communications between Hynes and others regarding plaintiff's progress on the PIP did not include Bergen. *See generally* Mot. Ex. 41 ("Re: Supporting Docs Email Thread"), ECF No. 41-43 (includes emails between Hynes, Katelyn Kelly, Norr, and Samantha Beltre). Email communications regarding the decision to terminate plaintiff were also made between Hynes and others, and did not include Bergen. *See* Mot. Ex. 42 ("Re: Confidential Email Thread"), ECF No. 41-44. There is no evidence that Hynes, or those individuals with whom he consulted regarding plaintiff's termination, made any offensive remarks concerning plaintiff's religion, race, or national origin or harbored discriminatory animus. *See* Counter 56.1 ¶ 63 (admitting that Hynes made no offensive remarks concerning plaintiff's religion, race, or national origin to plaintiff during plaintiff's employment at Northwell).

The other instances which plaintiff cites as a basis for his contention that he was treated unfairly due to his protected characteristics are too attenuated from his termination, and did not occur under circumstances that raise an inference of discrimination. For example, plaintiff objects to a verbal warning he received in 2018. *See* Opp'n 10. In 2018, plaintiff and LePore, who was plaintiff's supervisor at the time, were instructed by HR to keep tabs on a difficult employee, Procaccino, and give Bergen daily updates. LePore Dep. Tr. 39:5–17. Plaintiff testified that at some point, he was told by Bergen that plaintiff no longer needed to give daily updates on Procaccino, which Bergen denies. Opp'n Ex. 1 ("Pl. Dep. Tr. Day One") 95:6–15, ECF No. 42-3. Shortly after Procaccino was eventually fired, both plaintiff and his supervisor were given disciplinary notices for failing to give daily updates. LePore Dep. Tr. 44:2–5. Plaintiff testified that

"Bergen didn't hesitate or even HR didn't hesitate" to discipline plaintiff because of who plaintiff was "as a Muslim brown man," and because they were not happy about letting Procaccino, a white employee, go. Pl. Dep. Tr. Day One 114:5–115:12. Plaintiff's claim of discrimination surrounding this incident is purely speculative, and there is no evidence to suggest that it was motivated by any of plaintiff's protected characteristics. While plaintiff testified that he thought "[i]f [he] was [a] Caucasian manager, you know, [he] would not get [discipline]," plaintiff also testified that his own supervisor, a white manager, was disciplined in connection with the same incident. Pl. Dep. Tr. Day One 117:21–22, 119:22–120:6; LePore Dep. Tr. 90:10–13.

As plaintiff has failed to offer evidence that draws a connection between Bergen's offensive conduct and plaintiff's eventual termination, plaintiff has not established circumstances which give rise to an inference that discriminatory animus was the basis for his termination, or that discriminatory animus played any part in his termination. Thus, plaintiff has failed to establish a prima facie case of race, national origin, or religious discrimination in connection with his termination under either Title VII or the more lenient NYSHRL. Therefore, defendants' motion for summary judgment on these claims is **GRANTED**.

### B. Hostile Work Environment

Prior to 2019, "[h]ostile work environment claims under Title VII and the NYSHRL [were] governed by the same standard." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Under this standard, to establish a hostile work environment claim, the plaintiff needed to make a showing that the complained of conduct (1) was objectively severe or pervasive enough that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as

14

hostile or abusive; and (3) created that environment because of the plaintiff's protected characteristics. *Figueroa v. Johnson*, 648 F. App'x 130, 134 (2d Cir. 2016).

However, as of October 11, 2019, hostile work environment claims brought pursuant to the NYSHRL are considered under a more lenient standard. Under this more lenient standard, to establish a NYSHRL hostile work environment claim a plaintiff must show that he was subjected to "inferior terms, conditions or privileges of employment because of [his] membership in one or more . . . protected categories." N.Y. Exec. Law §§ 296(1)(h), 300. Courts have interpreted this requirement to be analogous to the requirements of the NYCHRL, which requires a plaintiff only show that he was treated "less well than other employees" because of his protected characteristics, and need not show that the conduct of which plaintiff complains was "severe" or "pervasive." *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023). The NYSHRL amendments do not have a retroactive effect. *Id*. Therefore, the Title VII standard applies to conduct which occurred prior to October 11, 2019. *See Wellner v. Montefiore Med. Ctr.*, No. 17-cv-03479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (The NYSHRL "amendments only apply to claims that accrue on or after the effective date of October 11, 2019.").

Plaintiff's briefing does not acknowledge the change in the standard for hostile work environment claims that accrued after October 2019. *See* Opp'n 27 (citing pre-amendment caselaw holding that the standard under the NYSHRL and Title VII are the same). In opposition to defendants' motion for summary judgment, plaintiff points to the following facts in support of his claim for a hostile work environment under both the NYSHRL and Title VII: "unfair discipline and negative performance reviews had been ongoing and repeated between 2019 and 2022 . . . Further the interference and

harassment with respect to Plaintiff's known religious practice and accommodation . . . , repeatedly scheduling meetings for unavailable times, and chastising Plaintiff for the harassment he was being subjected to[.]" Opp'n 28.

To analyze plaintiff's hostile work environment claims, the Court will consider the totality of the conduct in the record, from 2016 to 2022, to consider whether plaintiff has presented facts by which a reasonable jury could find that plaintiff was subjected to a hostile work environment in violation of Title VII. The Court will next consider the evidence in the record from 2019 to 2022 to determine whether plaintiff has established a plausible inference of a hostile work environment claim under the NYSHRL.

i. Title VII

To determine whether there is a genuine factual dispute concerning the harassment of which plaintiff complains and whether it was severe or pervasive enough to satisfy the first prong of a Title VII hostile work environment claim, the Court will consider whether "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that . . . alter[ed] the conditions of the victim's employment and create[ed] an abusive working environment." *Harris v. NYC Hum. Res. Admin.*, No. 20-cv-02011, 2021 WL 3855239, at *9 (S.D.N.Y. Aug. 27, 2021). To make this determination, courts must consider "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* In order for the conduct to be deemed pervasive, the "incidents must be more than episodic" and instead must "be sufficiently continuous and concerted." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004). Nevertheless, a single incident can create a hostile environment where it is so severe that it results in a "transformation"

16

of the plaintiff's workplace based on the plaintiff's protected characteristics. *Id.* Additionally, to establish a hostile work environment claim under Title VII, a plaintiff must show some connection between the hostile or abusive conduct and a protected characteristic. *See Parekh v. Swissport Cargo Servs., Inc.*, No. 08-cv-01994, 2009 WL 290465, at *4 (E.D.N.Y. Feb. 5, 2009) ("[T]he incidents comprising a hostile work environment claim . . . must occur under circumstances in which the incidents can reasonably be interpreted as having taken place on the basis of that trait[.]").

Here, the only conduct plaintiff relies upon to substantiate this claim, and which is connected to his protected characteristics, is "interference and harassment" with respect to plaintiff's Friday prayers, and "repeatedly scheduling meetings for unavailable times." Opp'n 28. Though not relied upon in support of his hostile work environment claim, plaintiff also offered evidence that defendant Bergen made a comment in late 2016 about LePore hiring a "Muslim guy," that he did "not like him," in reference to plaintiff, and Bergen's comment made in either 2019 or 2020 that people from plaintiff's background were not always as smart as plaintiff or easy to work with. HR Confidential Complaint 15:33–17:48. These comments are the kind of "stray remarks" which, while offensive, are not severe or pervasive enough to establish liability for a hostile work environment claim pursuant to Title VII. Additionally, plaintiff's testimony that he had to miss "4, 5 of [his] prayer sessions you know because [Hynes] wanted [plaintiff] to join some calls," Opp'n Ex. 2 ("Pl. Dep. Tr. Day Two") 44:2–5, ECF No. 42-4, does not rise to the level of a hostile work environment. Plaintiff has pointed to no evidence that he was harassed with respect to his Friday prayers or that any interference with his prayers was pervasive. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("[I]solated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory

17

harassment."); *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 624 (E.D.N.Y. 2020), *aff'd*, No. 20-3544-CV, 2021 WL 4097316 (2d Cir. Sept. 9, 2021) (finding five instances, only one of which constituted direct mocking, was insufficient for a reasonable jury to find a hostile work environment existed).

The other conduct of which plaintiff complains, and which he contends establishes a hostile work environment, is "unfair discipline and negative performance reviews." Opp'n 28. While plaintiff contends that he was subjected to discipline and negative reviews because of his protected characteristics, this conduct is neutral on its face. And while "actions that are racially neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be some circumstantial or other basis for inferring that such incidents were in fact discriminatory." *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 647 (W.D.N.Y. 2014).

No matter how genuinely upsetting or unfair they may be, actions that are unconnected to a plaintiff's protected characteristics cannot support a hostile work environment claim under Title VII. *See Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593, 595 (2d Cir. 2010) ("It is axiomatic that in order to establish a hostile work environment a plaintiff must demonstrate that the conduct occurred because of [his] membership in a protected class."); *Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 574 (S.D.N.Y. 2014) ("Bullying and harassment have no place in the workplace, but unless they are motivated by the victim's membership in a protected class, they do not provide the basis for an action under Title VII.").

For example, in *Hughes*, the plaintiff made several allegations of wrongdoing in support of her hostile work environment claim. 37 F. Supp. 3d 629 (W.D.N.Y. 2014). One of those allegations concerned racist comments posted on a "sympathy" card posted in an

employee kitchen area regarding a loss of incentive pay for the company's CEO, who was African American. *Id.* at 635. The other allegations concerned racially-neutral conduct by plaintiff's supervisor. *Id.* That alleged conduct included: undermining plaintiff in front of direct reports, excluding plaintiff from meetings, taking away plaintiff's work duties, and making negative comments about plaintiff's career advancement. *Id.* at 646–47. The court found that this conduct could not support a Title VII hostile work environment claim because plaintiff failed to connect the racially-neutral conduct to the race-based sympathy card incident. *Id.* Similarly here, plaintiff has failed to connect the discipline and negative reviews he received to his protected characteristics or conduct which was not neutral on its face.

Construing all of the evidence in the plaintiff's favor as the nonmovant by assuming that Bergen made the discriminatory comments to which LePore and plaintiff testified, and that Hynes scheduled at least five meetings during plaintiff's Friday prayer time, these incidents do not rise to the level of severity required to support a hostile work environment claim. Additionally, these incidents do not constitute continuous conduct that would allow a reasonable jury to find that plaintiff's work environment was "permeated with discriminatory intimidation, ridicule, and insult that . . . alter[ed] the conditions of [his] employment and create[ed] an abusive working environment." *See Harris*, 2021 WL 3855239, at *9. As plaintiff has failed to raise a genuine dispute of material fact which, if resolved in his favor, would allow a reasonable jury to find that he was subjected to a hostile work environment in violation of Title VII, defendants' motion for summary judgment on this claim is **GRANTED.**

ii. NYSHRL

Next, the Court considers whether the conduct that occurred after October 11, 2019 is sufficient to raise a plausible inference of a hostile work environment under the amended NYSHRL. As discussed above, a plaintiff bringing a hostile work environment claim under the NYSHRL no longer needs to show that the harassment complained of was "severe or pervasive," but must only show that the plaintiff was "treated less well" because of his protected characteristics. *Smith v. Nat'l Grid USA*, No. 2:21-cv-06899, 2025 WL 1248676, at *10–11 (E.D.N.Y. Apr. 30, 2025). To be entitled to summary judgment on a hostile work environment claim, a defendant must show that the conduct "amounted to nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Suri v. Grey Glob. Grp., Inc.*, 164 A.D.3d 108, 114 (1st Dep't 2018) (applying the NYCHRL).

The conduct of which plaintiff complains, and which is considered under the NYSHRL's amended standard, include plaintiff's 2019, 2020, and 2021 performance reviews all submitted by Bergen, a September 2020 written warning from Bergen, a December 2020 final written warning by Bergen, and Hynes's placement of plaintiff on a PIP. *See* Opp'n 28 (referencing plaintiff's "unfair discipline and negative performance reviews" between "2019 and 2022 when Plaintiff was ultimately terminated"). Plaintiff claims that Bergen made a comment in either 2019 or 2020 that people from plaintiff's background were not always as smart as plaintiff or easy to work with. HR Confidential Complaint 15:33–17:48. Plaintiff also claimed that his team was frequently understaffed and underresourced because Bergen would stall approving plaintiff's requests, while approving Hynes's requests within a few days. Plaintiff's Additional Statements of Fact ¶ 20, ECF No. 43-1. Lastly, plaintiff claimed that Hynes and others scheduled meetings

20

during his Friday afternoon prayers and would not move the meetings after plaintiff stated that the meeting time conflicted with his religious observance. Pl. Dep. Tr. Day Two 44:2–5. Plaintiff testified that he was forced to miss "4, 5 of [his] prayer sessions . . . because [Hynes] wanted [plaintiff] to join some calls." Pl. Dep. Tr. Day Two 44:2–5.

This conduct, considered under the totality of the circumstances, is sufficient to create a question of fact as to whether plaintiff was treated less well because of his protected characteristics. Negative performance reviews and discipline, by themselves, are insufficient to support a hostile work environment claim. Nevertheless, as plaintiff has presented evidence of offensive comments referencing plaintiff's protected characteristics, plaintiff has created a question as to whether Bergen's evaluations of plaintiff and the decisions to discipline plaintiff were motivated by discriminatory animus. *See Suri v. Grey Glob. Grp., Inc.*, 83 N.Y.S.3d 9, 13 n.10 (1st Dep't 2018) (applying the NYCHRL and finding that harsh criticism and professional exclusion could support a hostile work environment claim when presented in connection with a sexual overture); *see also Ruiz v. Credit Agricole Corp. & Inv. Bank*, No. 22-cv-10777, 2025 WL 1642406, at *8 (S.D.N.Y. June 10, 2025) (finding that potentially race-related related allegations were sufficient to suggest that defendant's criticism of plaintiff was "at least in part racially motivated" in "the more relaxed NYCHRL context").

Thus, the evidence offered by plaintiff is sufficient to raise a question of whether plaintiff was impermissibly treated "less well" than other employees because of his race, religion, or national origin. Therefore, defendants' motion for summary judgment as to plaintiff's hostile work environment claim under the NYSHRL is **DENIED**.

C. *Failure to accommodate*

Plaintiff next brings claims of religious discrimination pursuant to Title VII and the NYSHRL for failing to accommodate plaintiff's religious practices by scheduling meetings during plaintiff's Friday prayers. Defendants argue that the Court should grant summary judgment because plaintiff was granted his request for a reasonable religious accommodation. Mot. 29–30. The Court disagrees.

To succeed on a religious discrimination claim premised on failure to accommodate, "a plaintiff must first establish a prima facie case by showing that (1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer of this belief; and (3) [he] was disciplined for failure to comply with the conflicting employment requirement." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025). After a plaintiff has established a prima facie case, the employer "is required to show that it offered [him] a reasonable accommodation or that doing so would cause undue hardship." *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 WL 7059182, at *3 (S.D.N.Y. Oct. 12, 2022) (citing *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

Defendants argue that Hynes agreed to accommodate plaintiff's request for time to pray during the workday and asked that plaintiff mark his calendar so that the team could avoid scheduling meetings during those times, and that plaintiff refused and criticized this request as harassment. Mot. 29–30. Plaintiff responds by arguing that Hynes knew when plaintiff had Friday prayers, and yet continued to schedule meetings during this time, and that plaintiff was not asked to adjust his calendar with prayer times until after Hynes began supervising plaintiff. Opp'n 24.

It is undisputed that plaintiff has satisfied the first two prongs of a prima facie case for failure to accommodate. Defendant has not argued that plaintiff's Muslim faith is insincere, or that plaintiff's religious practice of attending Friday afternoon prayers did not conflict with plaintiff's work schedule. *See generally* Mot. The parties also do not dispute that Hynes was aware of plaintiff's need to attend Friday afternoon prayers. Counter 56.1 ¶ 219. The parties do dispute, however, whether plaintiff was disciplined for failing to comply with the conflicting work requirement. Plaintiff argues that he was, and cites his termination notice which alleged that plaintiff had failed to attend meetings or document prayer services on his work calendar. Opp'n 24. Defendants rebut this point by arguing that the record contains instances of plaintiff missing meetings for reasons unrelated to religious observance. Mot. 16–17. Construing all factual inferences in plaintiff's favor as the nonmovant, it is reasonable to assume that some of those missed meetings referred to in plaintiff's termination notice were those meetings which conflicted with plaintiff's observance of Friday afternoon prayer. Accordingly, the Court finds that plaintiff has established a prima facie case of failure to accommodate.

Having found that plaintiff has established his prima facie case, the Court considers whether defendants offered plaintiff a reasonable accommodation. To avoid liability for a failure to accommodate claim, "the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). "A reasonable accommodation is one that eliminates the conflict between the employment requirement and the employee's religious practice." *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-cv-03085, 2024 WL 168282, at *7 (S.D.N.Y. Jan. 12, 2024). Nevertheless, the "reasonableness of an employer's accommodation is a fact-specific

question that often must be resolved by a factfinder." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (applying the reasonable accommodation standard under the ADA and NYSHRL).

The parties do not dispute that Hynes directed plaintiff to designate on his calendar when he would be unavailable because he was participating in prayers. Counter 56.1 ¶ 221.[4] Defendants argue that Hynes's direction for plaintiff to mark his calendar so that the team could avoid scheduling meetings during plaintiff's prayers constituted a reasonable accommodation of plaintiff's religious practice, and thus summary judgment on this claim is warranted. *See* Mot. 29. Plaintiff does not directly address whether a request to notify his employer when he would be unavailable during the workday due to his religious belief constitutes an unreasonable accommodation. Plaintiff does argue that he should not have had to mark his calendar because "Hynes knew" when plaintiff had his prayers scheduled every Friday. Opp'n 24. Plaintiff also testified that he "did not feel like putting it on the calendar because [he] never needed it" before he started being managed by Hynes in 2022. Pl. Dep. Tr. Day One 204:6–8.

Nevertheless, plaintiff testified that he eventually acquiesced and placed his prayer times on his calendar. Pl. Dep. Tr. Day One 84:2–7. Plaintiff also testified that he was

---

[4]    In response to defendants' statement of undisputed fact which states "Hynes asked [plaintiff] to update his calendar to indicate his prayer times," plaintiff responded with a denial, stating that "Hynes knew the Jumma prayer time on Friday based not just on [plaintiff's] participation but members of Hynes' team." *See* Counter 56.1 ¶ 221. The Court considers this response an admission that Hynes asked plaintiff to update his calendar to indicate his prayer times. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Falls Lake Nat'l Ins. Co. v. Kalnitech Constr. Corp.*, No. 22-cv-01473, 2025 WL 913781, at *3 n.11 (E.D.N.Y. Mar. 26, 2025) ("Failure to expressly deny a statement of material fact or provide contrary record evidence constitutes an admission.").

required to miss "4, 5 of [his] prayer sessions . . .because [Hynes] wanted [plaintiff] to join some calls." Pl. Dep. Tr. Day Two 44:2–5. Construing the evidence in the light most favorable to plaintiff as the non-movant, plaintiff was required to miss prayer sessions to attend meetings. Thus, plaintiff has created a question of fact as to whether defendants' offered accommodation eliminated the conflict between plaintiff's religious observance and his job requirements and was therefore "reasonable" within the meaning of Title VII and the NYSHRL.

Accordingly, defendants' motion for summary judgment on plaintiff's Title VII and NYSHRL religious discrimination claims for failure to accommodate is **DENIED**.

### D. Retaliation

Plaintiff brings a retaliation claim pursuant to Title VII. Compl. ¶¶ 136–141. Defendants claim they are entitled to summary judgment on this claim, arguing that plaintiff has failed to present evidence of a retaliatory motive for his termination. Mot. 27–29. The Court finds that while plaintiff has established a prima facie case of retaliation, he has not met his burden of establishing a genuine question of fact as to whether defendants' proffered reasons for his termination were pretextual. Thus, defendants are entitled to summary judgment on plaintiff's Title VII retaliation claim.

To demonstrate a prima facie case of retaliation under Title VII, "a plaintiff must establish: (1) that he participated in an activity protected by Title VII, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Charles v. City of New York*, No. 21-cv-05567, 2023 WL 2752123, at *9 (S.D.N.Y. Mar. 31, 2023). To establish the third element of a prima facie Title VII retaliation claim, the plaintiff must

show that the retaliatory action was "materially adverse" and caused a harm that would dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006).[5] Examples of a materially adverse action include termination, demotion, change in title, or significantly diminished responsibilities. *Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015) (applying materially adverse standard to disparate treatment claim). Discipline, criticism, or counseling generally do not constitute materially adverse employment actions for purposes of a Title VII retaliation claim. *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) ("[C]ourts in this circuit have found that reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results[.]").

The fourth element of a prima facie case, causal connection, can be established when the plaintiff shows that the protected activity was closely followed in time by the adverse employment action, among other ways. *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 50 (2d Cir. 2025). The Second Circuit has found a four-month period between the protected activity and the materially adverse employment action sufficient to establish a

---

[5]    In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court acknowledged that the standard for an adverse employment action differs between Title VII's anti-discrimination provision and the Title VII's anti-retaliation provision. In *Muldrow*, the Court held that a plaintiff bringing claims pursuant to Title VII's anti-discrimination provision need only show "some harm . . . to prevail in a Title VII suit" and "need not show that the injury satisfies a *significance* test." *Id.* at 350 (emphasis added). The Court noted that, in contrast, Title VII's anti-retaliation provision continues to be governed by the "materially adverse" standard, which requires that a plaintiff show the allegedly retaliatory action caused the plaintiff "significant" harm. *Id.* at 348; *see also Khazin v. City of New York*, No. 24-1236-cv, 2025 WL 1091241, at *2 (2d Cir. Apr. 8, 2025) (describing *Muldrow* as "reiterating that the materially adverse standard applies to Title VII retaliation claims").

causal connection. *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001).

The burden then shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action. *Knox*, 134 F.4th at 49. If the employer meets this burden, the plaintiff must then show that the employer's proffered reason is pretextual. *Id.* Plaintiff's burden to establish pretext for a Title VII retaliation claim is more onerous than the burden to establish pretext for a Title VII disparate treatment claim. While a Title VII disparate treatment claim can survive summary judgment if the plaintiff shows that the employer's proffered reasons "were not the *only* reasons and that the prohibited factor was at least one of the motivating factors," *see Bart*, 96 F.4th at 570, to survive summary judgment on a retaliation claim, the plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action," *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 23-1311, 2024 WL 4116427, at *2 (2d Cir. Sept. 9, 2024) ("But-for causation does not require proof that retaliation was the only cause of the employer's action; it requires simply that the adverse action would not have occurred in the absence of the retaliatory motive.").

To establish pretext in a retaliation action, a plaintiff may "demonstrate[e] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Conclusory allegations of pretext are insufficient to show that a defendants' reasons are pretextual and avoid summary judgment. *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 623 (E.D.N.Y. 2020), *aff'd*, No. 20-3544-cv, 2021 WL 4097316 (2d Cir. Sept. 9, 2021).

i. Prima facie case of retaliation

Here, the parties do not dispute the first four prongs of a prima facie case of Title VII retaliation. The parties agree that plaintiff made complaints of discrimination. *See* Counter 56.1 ¶ 172. The parties also agree that, as part of the investigation into these complaints, plaintiff's supervisor Hynes was interviewed. Counter 56.1 ¶ 176. Plaintiff has therefore met the first two prongs of a prima facie case, as "knowledge of a complaint by the person who directed an adverse employment action is sufficient" to meet the second prong. *Knox*, 134 F.4th at 50. The parties also do not dispute that plaintiff was terminated, which satisfies the third prong of a prima facie case. *Id.*[6] The parties do disagree, however, as to the fourth prong of plaintiff's prima facie case—whether there was a causal connection between plaintiff's protected activity and the adverse employment action.

The record before the Court establishes that plaintiff lodged a complaint of discrimination and retaliation to HR on May 12, 2022. Counter 56.1 ¶ 172. Plaintiff was then placed on a PIP on July 7, 2022, less than two months after he lodged the May 12, 2022 complaint. Counter 56.1 ¶ 186. Plaintiff was then terminated on September 26, 2022

---

[6]     Plaintiff's briefing does not specify which adverse employment actions he believes were retaliatory. He argues that because of his complaints of discrimination, "Bergen began to retaliate and issue unwarranted disciplinary notices and annual negative performance reviews beginning in 2019 resulting in being placed on a [PIP] and ultimately terminated." Opp'n 25–26. While plaintiff's placement on the PIP and subsequent termination undoubtedly qualify as materially adverse employment actions for purposes of a Title VII retaliation claim, the discipline and negative performance reviews do not. *See Rasko v. N.Y.C. Admin. for Childs. Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) (finding that discipline, criticism, or counseling does not constitute an adverse employment action if not accompanied by any change in working conditions); *Franco v. City of New York*, No. 19-cv-05905, 2025 WL 964014, at *12 (E.D.N.Y. Mar. 31, 2025) (finding that an employer's criticism and yelling, by itself, would not constitute actionable conduct under Title VII's anti-retaliation provision). Thus, the Court concludes that plaintiff has offered evidence that he suffered a materially adverse employment action when he was terminated and thus considers whether plaintiff has offered evidence of a causal connection between his protected activity and his termination.

for failure to improve his performance on the PIP. *See* Counter 56.1 ¶¶ 227, 230. This temporal proximity is sufficient to establish a prima facie case of retaliation under Title VII. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (finding two month gap between complaint and termination sufficient to allege a causal connection for Title VII retaliation claim); *see also Neal v. Specialty Cable Corp.*, No. 21-cv-00497, 2022 WL 4584082, at *9 (D. Conn. Sept. 29, 2022) (finding plaintiff established causal connection by showing close temporal proximity between complaint and first instance of discipline when discipline was part of stated basis for plaintiff's termination); *Palumbo v. Carefusion 2200, Inc.*, No. 12-cv-06282, 2014 WL 3921233, at *17 (W.D.N.Y. Aug. 11, 2014) (finding plaintiff established prima facie case of NYSHRL retaliation with close temporal proximity between complaint and placement on a PIP one month later).  As plaintiff was placed on the PIP less than two months after his last complaint of discrimination, this is sufficient to establish a causal connection for purposes of his retaliation claim. Plaintiff has therefore offered evidence sufficient to state a prima facie case of retaliation in violation of Title VII.

ii. Defendants' proffered bases for plaintiff's termination

Having established a prima facie case of retaliation, the burden next shifts to the employer to articulate a nonretaliatory reason for plaintiff's termination. *Knox*, 134 F.4th at 50. To satisfy this burden, defendants point to plaintiff's insubordination, disregard for his manager's authority, unprofessionalism, and poor work performance. Mot. 24–25. These bases for termination are well-documented in the record before the Court. For example, on May 19, 2022, plaintiff sent an email to his manager Hynes which stated: "I am not sure why you are calling my team members and asking them about stuff" that you should be "asking me as their manager," and "You need to STOP doing that . . . [c]onsider

29

this a friendly advice." Mot. Ex. 44 at 12, ECF No. 41-46. In another email on May 26, 2022, plaintiff stated in an email to his manager: "Man, you have too many opinions and too many advice. STOP treating me as a new employee and I am not your slave." Mot. Ex. 44 at 11. In another email, after his manager noted that a weekly update was due on Tuesday mornings after plaintiff submitted his update on Tuesday after 5:00 PM, plaintiff responded "Do you realize Monday was close and I send it to you Tuesday evening?" Mot. Ex. 50 at 2, ECF No. 41-52. Additionally, during plaintiff's PIP meeting, in response to Hynes's concern that plaintiff had not scheduled a 1:30 PM meeting the previous day as requested, plaintiff stated that if Hynes thought the meeting was "so important, [he] should have put it together." PIP Meeting 18:04–09. Plaintiff also objected to Hynes's previous request that plaintiff send out meeting minutes, stating that this type of work was "not gonna happen by me because I don't have time to do that." PIP Meeting 23:42–52. Accordingly, defendants have established a nonretaliatory reason for plaintiff's firing.

As defendants have established a nonretaliatory basis for his termination, the burden shifts to plaintiff to offer evidence that the defendants' proffered reasons are pretextual, i.e., that a retaliatory motive was the but-for cause of plaintiff's termination. However, plaintiff's opposition does not respond to defendants' articulated nonretaliatory reasons for his termination, and states simply that because "there is an undeniable temporal proximity" between plaintiff's complaints about Bergen and "the adverse employment action," summary judgment must be denied. *See* Opp'n 26–27. However, "[t]o survive summary judgment at this stage, [plaintiff] cannot rely solely on temporal proximity." *See Knox*, 134 F.4th at 50. Moreover, while plaintiff disputes the bases for discipline issued by Bergen, *see* Opp'n 23, the last disciplinary action taken by Bergen occurred in December 2020, approximately one year and six months before plaintiff was

placed on the PIP in July 2022, and approximately one year and nine months before plaintiff was terminated on September 26, 2022, *see* Counter 56.1 ¶¶ 98, 186, 230.

Additionally, Hynes became plaintiff's supervisor in early 2022 and made the decision to terminate plaintiff in consultation with HR. Counter 56.1 ¶¶ 164, 227–29. That decision, as noted by defendants, was supported by plaintiff's insubordination and unprofessional conduct, among other things. Plaintiff does not dispute that these incidents occurred, and offers no evidence by which a trier of fact could find that these bases are a pretext for retaliation—in fact, plaintiff does not address any of his conduct regrading Hynes, his direct supervisor and the individual who made the decision to terminate plaintiff in consultation with HR. *See* Opp'n 25–27. Accordingly, plaintiff has failed to raise a question as to whether retaliatory motive was a but-for cause of his termination.

As plaintiff has failed to meet his burden to raise a reasonable inference that defendants' proffered reason for his termination was a pretext for retaliation, defendants' motion for summary judgment as to this claim is **GRANTED**.

### E.  Aiding and Abetting under the NYSHRL

Plaintiff also brings claims pursuant to Section 296 of the NYSHRL against all defendants. This section of the NYSHRL makes it unlawful to "aid, abet, incite, compel or coerce the doing" of any unlawful acts of discrimination, including the creation of a hostile work environment. N.Y. Exec. Law § 296(6). Defendants move for summary judgment on plaintiff's claims against each individually named defendant. As plaintiff has offered evidence sufficient to support his failure to accommodate claim based on Hynes's conduct, and a NYSHRL hostile environment claim based on Bergen's conduct, defendants' motion for summary judgment as to those defendants is denied. *See Maher*

*v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 262 (E.D.N.Y. 2009) ("[A]n individual may be liable under § 296(6) for aiding and abetting an unlawful discriminatory practice of his employer even where his conduct serves as the sole predicate for the employer's liability."). Defendants also move for summary judgment as to the individual defendants Sig Stefansson, Vincent Pawlowski, and Karina Norr, arguing that plaintiff has failed to show that these individuals supervised plaintiff, were involved in his performance assessments, or made the decision to terminate him. Plaintiff concedes to discontinuance of his claims against Pawlowski and Norr but argues that his claims against Stefansson should continue, as Stefansson "fail[ed] to hold Bergen accountable . . . and continu[ed] to approve the discipline that was being issued to [plaintiff.]" Opp'n 29–30. The Court finds that this conduct is insufficient to show that Stefansson aided or abetted violations of the NYSHRL, and thus summary judgment as to defendant Stefansson is granted.

To be liable under Section 296 for aiding and abetting a violation of the NYSHRL, the defendant "need not have had an employer-employee or supervisory relationship with the plaintiff." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Nevertheless, a plaintiff must show that that the defendant at issue actually participated in unlawful conduct. *Id.* To establish aiding and abetting liability, the plaintiff must establish that the individual defendant "was aware of the discrimination, and participated or condoned it." *Almodovar v. City of New York*, 208 N.Y.S.3d 850 (N.Y. Sup. Ct. 2024), *amended on reargument*, 215 N.Y.S.3d 920 (N.Y. Sup. Ct. 2024). Additionally, "[t]he aider and abettor must also share the intent or purpose of the principal actor." *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024).

The Court finds that plaintiff has not offered sufficient evidence of defendant Stefansson's involvement in allegedly discriminatory actions or evidence that he shared

the intent of Hynes or Bergen to give rise to liability pursuant to Section 296 of the NYSHRL. In support of his argument that Stefansson should be held liable, plaintiff refers the Court to the statement of facts contained in his opposition. *See* Opp'n 29–30. However, the only specific mention of defendant Stefansson in plaintiff's statement of facts is that "on January 25, 2022, Plaintiff complained to Defendant Stefansson that Bergen was belittling and being condescending toward one of the senior network engineers on [plaintiff's] team." Opp'n 16. This complaint was documented in the record and shows that Stefansson reached out to the senior network engineer at issue, who refuted plaintiff's characterization of his interaction with Bergen. *See* Mot. Ex. 25 at 2–3, ECF No. 41-27.

While the record contains several complaints submitted to Stefansson by plaintiff, the record also reflects that those complaints were investigated by Northwell's HR Department, which concluded that plaintiff's complaints of discrimination and retaliation were unsubstantiated. *See, e.g.*, Counter 56.1 ¶¶ 159–60. While a "failure to conduct a proper and thorough investigation or take remedial measures upon a plaintiff's complaint of discrimination is sufficient to impose liability," the plaintiff must offer evidence that the defendant's response was improper. *Ananiadis v. Mediterranean Gyros Prods., Inc.*, 54 N.Y.S.3d 155. 159 (2d Dep't 2017). While plaintiff disagrees with the findings of the HR investigations, he has failed to offer evidence that the investigations were improper or that Stefansson improperly relied on their findings.

Thus, defendants' motion for summary judgment as to the NYSHRL § 296 claims against defendant Stefansson is **GRANTED**.

## II.    Section 1983 Claim

Defendants move for summary judgment as to all of plaintiff's claims. Mot. 7. Nevertheless, defendants present no argument as to why plaintiff's eighth cause of action, brought pursuant to 42 U.S.C. § 1983 for equal protection violations, should be dismissed on summary judgment. Plaintiff similarly advances no arguments in support of his Section 1983 claim in his opposition to defendants' motion for summary judgment.

Section 1983 "provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing 42 U.S.C. § 1983). There is no evidence in the record before the Court to suggest that any defendant in this action is a state actor. Plaintiff is therefore ordered to show cause, on or before August 25, 2025 why his Section 1983 claim should not be dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Defendants Sig Stefansson, Vincent Pawlowski, and Karina Norr are dismissed from this action. Plaintiff is also ordered to show cause, on or before August 25, 2025, why his Section 1983 claim should not be dismissed. In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by September 8, 2025.

**SO ORDERED.**

      */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:        August 8, 2025
              Brooklyn, New York

34